SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION
IN THE OFFICIAL REPORTERS

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PAMELA McKINNEY**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES POSTAL SERVICE**, <br><br> Defendant. | Civil Action No. 11-cv-631 (RLW) |

## MEMORANDUM OPINION[1]

Plaintiff Pamela McKinney ("Plaintiff" or "McKinney") brings this putative class action on behalf of herself and all other similarly situated beneficiaries, seeking to recover unpaid interest on additional death benefit amounts that were paid, or that should have been paid, by the United States Postal Service (the "Postal Service") pursuant to an Annuity Protection Program. The matter is presently before the Court on McKinney's Motion for Class Certification. (Dkt. No. 38). Having carefully considered the parties' respective briefing, the entire record in this case, and the arguments of counsel during a hearing on January 14, 2013, the Court finds that McKinney's proposed class satisfies all of the elements of Federal Rule of Civil Procedure 23(a), as well as the "predominance" factor of Rule 23(b)(3), for the reasons set forth herein. However,

---

[1] This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or, alternatively, to assist in any potential future analysis of the *res judicata*, law of the case, or preclusive effect of the ruling. The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel. *Cf.* FED. R. APP. P. 32.1. Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an unpublished disposition means that the Court sees no precedential value in that disposition." D.C. Circuit Handbook of Practice and Internal Procedures 43 (2011).

the Court defers a full ruling on McKinney's Motion for Class Certification pending limited discovery efforts aimed at the manageability aspect of Rule 23(b)(3)'s "superiority" prong, followed by a further report and/or additional briefing from the parties on that issue.

## BACKGROUND

In July 1981, the Postal Service and several postal employee unions entered into a three-year collective bargaining agreement ("CBA") that relates to this case. (Dkt. No. 38-1). As relevant here, the CBA deferred until 1984 a cost-of-living adjustment ("COLA") in the amount of $3,619.00 that would have otherwise gone into effect in 1981. (*Id.* at Art. 9, sect. 3). At that time, the Postal Service and the unions also executed a memorandum of agreement, known as the Annuity Protection Program, which provided, in relevant part, that:

> [N]o employee[] whose basic pay is not increased by the amount of $3,619 (the annualized cost-of-living adjustment accumulated during the life of the 1978 National Agreement) before the first full pay period of October, 1984, due to the provisions set forth in Article 9, Section 3, of the 1981 National Agreement, will suffer any diminution of annuity (e.g., optional, disability, or survivors benefits) by reason thereof.

(*Id.* at p. 163). Apparently, the Postal Service and the unions also had an oral understanding that "no one will get hurt" by the delay in rolling the accumulated COLA into employees' basic pay. (Dkt. No. 26 ("Am. Compl.") at ¶ 11).

Subsequently, the Postal Service and the unions disagreed over the scope of the Annuity Protection Program surrounding which specific benefits were to be included within its terms. (*Id.* at ¶ 12). That dispute was arbitrated, and a decision and award was issued by the arbitrator, Clark Kerr, on August 5, 1986. (Dkt. No. 38-2). Among other rulings, the arbitrator determined that life insurance benefits were among those benefits included in the Annuity Protection Program, explaining that "[f]ull remedy should be awarded to those survivors of deceased postal

2

employees who have suffered a diminution of life insurance benefits." (*Id.*). The arbitrator did not make any determination as to whether interest should be awarded on any remedies, "since this was not adequately explored before him," and that issue was left open for discussion between the parties. (*Id.*). For reasons unexplained, however, the Postal Service and the unions apparently never discussed whether interest should be included in the award, nor did they ever ask the arbitrator to rule on that issue.

According to McKinney's Amended Complaint, her father, Lepolion McKinney, was employed by the Postal Service from April 17, 1969 through December 17, 1969, and later from November 1980 until January 31, 1982. (Am. Compl. at ¶ 5). He passed away on January 31, 1982, and his death was ruled accidental, entitling McKinney and her siblings to death benefits as beneficiaries under her father's life insurance policy from the Postal Service. (*Id.* at ¶¶ 6-7). According to McKinney, the Office of Federal Employees' Group Life Insurance (OFEGLI) issued initial death benefit payments to her and her siblings shortly after his death. (*Id.*). But her father was subject to the Annuity Protection Program encompassed in the July 1981 CBA, which meant that those initial death benefit payments did not factor in additional amounts that would have been paid out as a result of the deferred COLA.

After the Kerr Award was issued in July 1986, decades inexplicably passed before the Postal Service took any action to pay McKinney or her siblings the additional benefits to which they were owed under the Annuity Protection Program. (*Id.* at ¶¶ 18, 23). Finally, on July 23, 2008, McKinney received a letter from the Postal Service, notifying her that she may be eligible for an additional death benefit payment. (*Id.* at ¶ 18; Dkt. No. 41-1). On August 22, 2008, McKinney was sent a check from the Postal Service in the amount of $2,665.80, which was described as "the difference in the death benefit you had received from OFEGLI and the amount

you would have received if applicable cost of living adjustments had been part of [her father's] basic pay." (Am. Compl. at ¶ 20). She also alleges that on May 22, 2009, she received a second check, in the amount of $1,333.33, representing the COLA adjustment on a double benefit under her father's life insurance policy based on the classification of his death as "accidental." (*Id.* at ¶ 21). Altogether, McKinney received an additional $3,999.13 in death benefits attributable to the Annuity Protection Program. (*Id.* at ¶ 22). However, the Postal Service refused to pay McKinney any interest on these additional amounts, ostensibly because "the agreements do not state that the USPS is obligated to pay any interest on the monies due to the beneficiaries." (*See* Dkt. Nos. 38-3, 38-4, 38-5).

McKinney now brings this putative class action on behalf of herself and all other similarly situated beneficiaries, seeking to recover interest on any additional benefits that were, or that should have been, paid out by the Postal Service pursuant to the Annuity Protection Program. Through her Amended Complaint, she asserts four remaining claims: (1) Breach of Contract, (2) Unjust Enrichment, (3) Enforcement of Arbitration Decision, and (4) Accounting.[2] As defined in her moving papers, McKinney seeks to certify the following proposed class:

> All former employees of the United States Postal Service covered by the July 1981 Collective Bargaining Agreement (CBA), the Memorandum of Agreement and/or the oral understanding among the Postal Service and the unions relating to the CBA, and their heirs and beneficiaries, who were paid or were entitled to be paid benefits in accordance with the agreements and the arbitration decision dated August 5, 1986 alleged in paragraph 14 of the amended complaint, and who were not paid interest.

(Dkt. No. 38 ("Pl.'s Mem.") at 1).

---

[2] In addition, McKinney originally advanced a conversion claim in this action, but the Court dismissed that count on August 31, 2012, after finding that it was preempted by the Federal Tort Claims Act. (*See* Dkt. Nos. 35, 36).

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION
IN THE OFFICIAL REPORTERS

## ANALYSIS

**A. McKinney's Claims Were Timely Filed Under 28 U.S.C. § 2401**

As an initial matter, and before even turning to the issue of class certification, the Postal Service argues that the Court should dismiss McKinney's claims for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 2401(a), which provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). It bears mentioning that this is not the first time the Postal Service has argued for dismissal on jurisdictional grounds. The Court previously considered and rejected a number of jurisdictional arguments raised by the Postal Service through its Motion to Dismiss McKinney's Amended Complaint. (*See* Dkt. No. 27). Ultimately, the Court concluded that McKinney properly invoked 39 U.S.C. §§ 409, 1208(b) as the jurisdictional basis for her claims, and found that her claims were timely filed. The Postal Service's newest jurisdictional argument fares no better.

According to the Postal Service, the limitations period set forth in § 2401(a) is jurisdictional, and as a result, the Postal Service argues, McKinney cannot invoke any equitable doctrines to extend the six-year deadline for commencing her claims against the United States. To begin with, the law on these issues is not as settled as the Postal Service suggests. While the D.C. Circuit has previously characterized § 2401(a) as a "jurisdictional condition," *P&V Enters. v. United States Army Corps of Eng'rs*, 516 F.3d 1021, 1026 (D.C. Cir. 2008), it has also expressly refrained from deciding whether § 2401(a) is "susceptible to judicial exceptions" and equitable doctrines. *Felter v. Kempthorne*, 473 F.3d 1255, 1259-60 (D.C. Cir. 2007) ("We need not resolve this issue, for [appellant's] claims fail even if [the continuing violation and equitable

tolling doctrines] apply to section 2401(a).").[3] In this Court's view, therefore, whether § 2401(a) is jurisdictional in nature, and whether equitable exceptions can apply to extend its limitations period, remain open questions. But, on balance, the Court need not wrestle with these thorny issues because, even assuming that § 2401(a) is a jurisdictional condition to suit that precludes the application of equitable principles, the Postal Service's argument goes a step too far.

More specifically, the Postal Service argues that because § 2401(a) is jurisdictional, McKinney cannot rely on the so-called "discovery rule" to extend the statute of limitations. (Dkt. No. 39 ("Def.'s Opp'n") at 8-10). In so arguing, however, the Postal Service inaccurately characterizes the discovery rule as an equitable doctrine. Unlike the doctrines of equitable tolling and estoppel, for example, "which ask whether equity requires extending a limitations period," the discovery rule does not operate to extend or toll the statute of limitations period; rather, the discovery rule is a "legal doctrine which governs when a limitations period begins to run" in the first place. *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578-79 (D.C. Cir. 1998) (explaining the "sometimes muddled" distinction between the discovery rule and the equitable doctrines of estoppel and equitable tolling).[4] As a result, the D.C. Circuit has long

---

[3] In describing the unsettled nature of these issues, the Court of Appeals noted the "tension" between the Supreme Court's holding in *Irwin v. VA*, 498 U.S. 89, 95-96 (1990), that the "same rebuttable presumption of equitable tolling applicable to suits against private defendants should apply to suits against the United States," and the D.C. Circuit's own prior opinions that § 2401(a) is "a jurisdictional condition attached to the government's waiver of sovereign immunity." *Felter*, 473 F.3d at 1260; *see also Harris v. FAA*, 353 F.3d 1006, 1013 n.7 (D.C. Cir. 2004). Even in its relatively recent decision in *P&V Enterprises*, the Circuit found no occasion to resolve this tension because neither party challenged § 2401(a)'s jurisdictional nature on appeal in that case. *P&V Enters.*, 516 F.3d at 1027.

[4] As one leading commentator on issues of federal procedure has explained:
Another possible pitfall lies in the <u>easily blurred distinction between accrual of the plaintiff's cause of action and notions of estoppel or tolling of the limitations period</u>. The typical statute of limitations normally begins to run at the point of accrual of the plaintiff's claim; the running of the period is interrupted and postponed by such phenomena as estoppel or tolling.

described the discovery rule as "the general accrual rule in federal courts," rather than as an equitable exception to general statute of limitations principles. *See, e.g.*, *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 (D.C. Cir. 1991) ("[T]he discovery rule is to be applied in all federal question cases in the absence of a contrary directive from Congress"); *Sprint Commc'ns Co., L.P. v. FCC*, 76 F.3d 1221, 1226 (D.C. Cir. 1996). As explained by the *Connors* court, the discovery rule can be summarized as follows:

> [I]f the injury is such that it should reasonably be discovered at the time it occurs, then the plaintiff should be charged with discovery of the injury, and the limitations period should commence, at that time. But if, on the other hand, the injury is not of the sort that can readily be discovered when it occurs, then the action will accrue, and the limitations period commence, only when the plaintiff has discovered, or with due diligence should have discovered, the injury.

*Connors*, 935 F.2d at 342 (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) (Posner, J.). In either circumstance, the application of the discovery rule determines when a claim accrues and, in turn, when the statute of limitations period commences—not whether the limitations period should be tolled or extended. Thus, even assuming that § 2401(a) is arguably characterized as a jurisdictional condition that would preclude the use of equitable principles to extend the statute of limitations, this would serve as no bar to the Court applying the well-settled discovery rule to determine when the applicable statute of limitations underlying McKinney's claims accrued in the first place.[5]

---

4 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1056, at 239 (3d ed. 2002) (emphasis added). Thus, the "discovery rule" is a legal doctrine that determines the "accrual of the plaintiff's cause of action"—*i.e.*, the point at which the limitations period begins to run—rather than an equitable doctrine that permits the "interrupt[ion] and postpone[ment]" of an already-running limitations period. *Id.*

5   Notably, at least one other judge in this District has applied the "discovery rule" in determining when the statute of limitations accrued for claims brought under § 2401(a). *Nihiser v. White*, 211 F. Supp. 2d 125, 128 (D.D.C. 2002) (Lamberth, J.). And, separate and apart from the application of true equitable exceptions, the D.C. Circuit has also expressly declined to decide whether the discovery rule governs the accrual of the statute of limitations under §

None of the cases cited by the Postal Service compel a different result.  To be sure, the Court recognizes that other members of this bench have, in passing, described the discovery rule as an equitable doctrine.  *See, e.g.*, *W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 138 (D.D.C. 2008) (Bates, J.) ("Traditionally, when a statute of limitations has been deemed jurisdictional, it has acted as an absolute bar and could not be overcome  by the application of judicially recognized exceptions, such as waiver, estoppel, equitable tolling, fraudulent concealment, the discovery rule, and the continuing violations doctrine."); *Conservation Force v. Salazar*, 811 F. Supp. 2d 18, 27 (D.D.C. 2011) (Rothstein, J.); *Terry v. United States SBA*, 699 F. Supp. 2d 49, 54-55 (D.D.C. 2010) (Huvelle, J.); *Felter v. Norton*, 412 F. Supp. 2d 118, 122-23 (D.D.C. 2006) (Roberts, J.).  But all of those cases involved truly equitable exceptions—either the continuing violations doctrine and/or the doctrine of equitable tolling—and did not specifically consider whether the discovery rule can or should apply for purposes of § 2401(a).  Therefore, while those decisions are not binding on this Court in any event, the cursory characterizations therein of the discovery rule as an equitable exception are dicta.[6]

Therefore, as the Court has already found, McKinney's claims against the Postal Service were timely filed.  In arguing that the Court lacks subject matter jurisdiction based on the six-year bar of § 2401(a), the Postal Service seems to implicitly argue—without ever expressly stating—that McKinney's claims somehow accrued at the time that the underlying arbitration

---

2401(a) in an action challenging final agency action under the Administrative Procedure Act. *Hardin v. Jackson*, 625 F.3d 739, 743 (D.C. Cir. 2010) ("[E]ven assuming the discovery rule applies here—an issue we do not decide—the appellants' action was filed out of time.").

[6]   The Court also notes that, of those cases, only *Felter v. Norton* cites to any circuit authority for the proposition that the discovery rule is an equitable, "judicially recognized exception" to the statute of limitations.  *See Felter*, 412 F. Supp. 2d at 122 (citing *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 645 (9th Cir. 1983)).  Because *Nelson* is a case from the Ninth Circuit Court of Appeals construing and applying California state law, its reasoning has little application to a case applying federal law that is pending in the District of Columbia.

8

award was originally issued in 1986. This is incorrect. It was not until July 23, 2008, that McKinney received notice that she had not been paid the full amount of death benefits to which she was entitled. It was also the first time that McKinney knew, or reasonably should have known, that the Postal Service would not pay interest on the additional benefits she received at that time. Therefore, her right of action against the Postal Service accrued at that time, on July 23, 2008. Because McKinney filed her lawsuit less than three years later, on March 28, 2011, her claims in this matter were commenced well within the six-year period prescribed by 28 U.S.C. § 2401(a), and the Postal Service's newest jurisdictional attack is without merit.

### B.  Standard Governing Class Certification

To secure class certification, a plaintiff "must affirmatively demonstrate [her] compliance with" Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011). First, a plaintiff seeking certification must satisfy the four threshold elements of Rule 23(a), by showing:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Love v. Johanns*, 439 F.3d 723, 727 (D.C. Cir. 2006) (quoting FED. R. CIV. P. 23(a)). "If all four prerequisites under Rule 23(a) are met, then [a plaintiff] must also show that [her] claims fit within one of the subsections of Rule 23(b)." *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-16 (1997)). In determining whether to certify a class, the district court must undertake a "rigorous analysis" to confirm whether the requirements of Rule 23 have been satisfied. *Dukes*, 131 S. Ct. at 2551-52 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Applying these standards, the Court concludes that, after narrowing

McKinney's proposed class in some of the respects urged by the Postal Service, as explained more fully below, the proposed class in this case meets all of the threshold requirements of Rule 23(a), along with the "predominance" element of Rule 23(b)(3).[7]

### C. Rule 23(a) Factors

#### 1. Numerosity

Under Rule 23(a)(1), McKinney must establish that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). McKinney need not "provide an exact number of putative class members in order to satisfy the numerosity requirement," *Pigford v. Glickman*, 182 F.R.D. 341, 347 (D.D.C. 1998), and "[c]ourts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members." *Cohen v. Warner Chilcott Public Ltd. Co.*, 522 F. Supp. 2d 105, 114 (D.D.C. 2007). Notably, the Postal Service expressly concedes that "a properly defined class of beneficiaries would likely exceed forty in number." (Def.'s Opp'n at 15). Given this concession, and based on the Court's own analysis, McKinney has satisfied the numerosity requirement. Indeed, as McKinney points out, the Postal Service's records indicate that, since January 2009 alone, it has identified and paid additional death benefits under the Annuity Protection Program to at least 503 beneficiaries, (Dkt. No. 41 ("Pl.'s Reply") at 17), and reaching back through the full statutory period, that number will only grow. In addition, as of the date of its opposition, the Postal Service estimates that 1,142 additional beneficiaries remain unable to be located. (Dkt. No. 39-1 at ¶ 7(m)). Therefore, given the number of potential class

---

[7] As already explained, the Court expresses no opinion at this juncture as to whether McKinney's proposed class satisfies the "superiority" prong of Rule 23(b)(3).

members, and their apparent geographic dispersion throughout the United States, the Court finds that joinder would be impracticable and that the numerosity requirement is satisfied.

### 2. Commonality

Rule 23(a)(2) requires that there are questions of law or fact common to the class. FED. R. CIV. P. 23(a)(2). "To establish commonality under Rule 23(a)(2), a plaintiff must identify at least one question common to all members of the class." *Garcia v. Johanns*, 444 F.3d 625, 632 (D.C. Cir. 2006) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)). "Significantly, 'factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members.'" *Cohen*, 522 F. Supp. 2d at 114 (quoting *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003)). Here, McKinney has successfully shown that common questions of law and fact exist with respect to her proposed class. Most significantly, all of the potential class members' claims will hinge on a central legal question—whether the Postal Service is obligated to pay interest on additional benefits issued to beneficiaries under the Annuity Protection Program. In addition, their claims are underpinned by common facts, as all of their claims derive from the same CBA, the same Annuity Protection Program, and the same arbitration award. Further, it appears that the Postal Service's explanation for refusing to pay interest on these additional benefits is uniform across the entire class: in its view, "the agreements do not state that the Postal Service is obligated to pay any interest on the monies due to the beneficiaries." (*See* Dkt. No. 38-3). These unifying questions of law and fact are more than sufficient to satisfy the commonality prong of Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). In essence, "[t]he typicality requirement aims at ensuring that the class representatives have suffered injuries in the same general fashion as absent class members." *Cohen*, 522 F. Supp. 2d at 115 (internal citations and quotation marks omitted). A proposed class representative's claim is "typical if it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory." *Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996), *aff'd,* 124 F.3d 1309 (D.C. Cir. 1997).

The Postal Service raises a number of arguments attacking McKinney's proposed class as too broad—arguments that the Court believes are most aptly characterized as challenges to the typicality prong of Rule 23(a)(3). First, the Postal Service argues that McKinney's proposed class is overly broad because it includes beneficiaries whose claims have been extinguished by the statute of limitations. (Def.'s Opp'n at 17-19). Second, the Postal Service asserts that McKinney's claims are not typical of former Postal Service employees, who, unlike McKinney, must first file a grievance under their CBA before pursuing any claim in court. (*Id.* at 19-21). Third, the Postal Service argues that McKinney's claims—which are based upon her receipt of death benefits—are not typical of beneficiaries who received (or should have received) other categories of benefits under the Annuity Protection Program, such as disability benefits. (*Id.* at 22-23). Notably, McKinney largely consents to these limitations in her reply briefing, and agrees that "[s]ome narrowing of the class is appropriate." (Pl.'s Reply at 14). The Court discusses each issue in turn.

First, the Postal Service argues that the claims of putative class members who received notice of additional death benefits prior to March 28, 2008 are time-barred, which means that those individuals must be excluded from any potential class. In so arguing, the Postal Service relies on a three-year statute of limitations, apparently drawing from the Court's earlier determination that the District of Columbia's three-year statute of limitations for breach of contract claims, D.C. Code § 12-301(7), was most analogous to McKinney's claims in this case. (*See* Dkt. No. 36 at 6:13-20). The Postal Service is correct that "the applicable statute of limitations marks the outer boundary for class membership." *Schmidt v. Interstate Federal Sav. & Loan Assoc.*, 74 F.R.D. 423, 428 (D.D.C. 1977). As a general matter, McKinney concedes as much, but she contends that 28 U.S.C. § 2401(a) provides the more appropriate statute of limitations for her claims, which would extend the statutory period back six years, until March 25, 2005. (Pl.'s Reply at 15). At first blush, McKinney's argument has some appeal, particularly given that the Postal Service itself invoked § 2401(a) to seek dismissal of McKinney's claims on jurisdictional grounds. But at oral argument, counsel for the Postal Service asserted that § 2401(a) simply imposes an outer limit on claims against the United States and that its broader, "catch-all" provisions should not displace a more specific statute of limitations governing the particular claims at issue. The Court agrees.

"Though § 2401(a) sets an outside time limit on suits against the United States, there is nothing to suggest that Congress intended it to govern any time a court finds a cause of action without a specific limitations period." *Price v. Bernanke*, 470 F.3d 384, 388 (D.C. Cir. 2006). Rather, in the absence of a clearly-prescribed limitations period, the Court "must borrow an appropriate statute of limitations from an analogous statute," *id.* at 387 (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983)), and in so doing, the Court adheres to its

earlier determination that the three-year limitations period of D.C. Code § 12-301(7) governs McKinney's claims. (*See* Dkt. No. 36 at 6:13-20). Indeed, the Supreme Court has made clear that state statutes of limitations are the "lender of first resort," *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 33-34 (1995), which means that this Court should "presumptively apply the limitation period that would apply to the state law claim that is most closely analogous to the federal claim." *Cephas v. MVM, Inc.*, 520 F.3d 480 (D.C. Cir. 2008) (applying D.C. Code § 12-301(7) to contractual claim under § 301 of the Labor Management Relations Act) (internal citations and quotation marks omitted). And given the contractual nature of McKinney's claims, the Court finds it most appropriate to apply the analogous state-law limitations period of D.C. Code § 12-301(7), rather than the more generalized "catch-all" limitations period of 28 U.S.C. § 2401(a).[8] As a result, McKinney's proposed class shall exclude all beneficiaries who received notice that they were entitled to additional benefits on or before March 28, 2008—*i.e.*, more than three years before McKinney filed this action.

Second, the Postal Service argues that McKinney's proposed class cannot include "former employees" of the Postal Service because those individuals must have exhausted the mandatory grievance process under the applicable CBA. In response, McKinney does not meaningfully dispute this argument, although she rests on the alternative rationale that former employees' claims would be largely "moot" as time-barred by the statute of limitations. (Pl.'s Reply at 15-16). In either event, McKinney effectively concedes that "former employees" should be excluded from any certified class, and the Court finds no reason to depart from the

---

[8] Otherwise, this would create the anomalous result of effectively doubling the limitations period covering the claims of McKinney's proposed class, simply because she asserts her claims against the United States, rather than a private entity. As our Circuit has explained, "[g]iven that statutes of limitations against the government involve a waiver of sovereign immunity, it seems unlikely Congress intended such an anomaly." *Price*, 470 F.3d at 388.

parties' agreement on the issue. Therefore, only former employees' beneficiaries—rather than the former employees themselves—shall be included in McKinney's proposed class.[9]

Third, the Postal Service contends that any potential class should be expressly limited to beneficiaries who received death benefits under the Annuity Protection Plan, and should not include beneficiaries of other categories of benefits, such as disability benefits. The Postal Service insists that McKinney has not demonstrated that her claims—which are premised exclusively on her receipt of additional death benefits—are common to or typical of claims by individuals who may have received other forms of benefits. McKinney counters that this "is probably untrue," and asserts, in conclusory fashion, that "the issue in this case does not depend on the type of benefits at issue." (Pl.'s Reply at 16). Yet, she goes on to concede that the proposed class could be narrowed somewhat on these grounds, and she states that beneficiaries due interest on disability benefits "are likely excluded on limitation grounds." (*Id.*). From the Court's perspective, neither party clearly identified what other categories of benefits—other than death benefits and disability benefits—may have been the subject of supplemental payments under the Annuity Protection Program. Of course, McKinney bears the burden of establishing that her claims are typical of the putative class members she seeks to represent. And while the Court believes she meets this burden with respect to other death benefit beneficiaries, the Court simply cannot, on the present record, conclude the same with respect to individuals, if any, who received other types of supplemental benefit payments under the Annuity Protection Program. Accordingly, the Court finds that McKinney's proposed class should be limited to beneficiaries who received death benefits under the Annuity Protection Program.

---

[9]   Practically speaking, this limitation is likely subsumed by the Court's additional determination that McKinney's class must be limited to those beneficiaries who received death benefits under the Annuity Protection Program. Nonetheless, for the sake of thoroughness, the Court expressly resolves this question as well.

In sum, after applying these limitations to the scope of McKinney's putative class, the Court finds that McKinney's claims are typical of those individuals falling within the following class definition:

> All beneficiaries of deceased United States Postal Service employees who first received notice, on or after March 28, 2008, that they may be entitled to an additional death benefit payment under provisions of the U.S. Postal Service Annuity Protection Program.[10]

### 4. Adequacy

The final requirement of Rule 23(a) is that the "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (quoting *Nat'l Assoc. of Regional Medical Programs, Inc. v. Matthews*, 551 F.2d 340, 345 (D.C. Cir. 1976)). With respect to the proposed class definition as narrowed, there is no evidence that McKinney's interests are antagonistic or in some way conflict with the interests of the unnamed class members. The Court has closely reviewed the record, and discerns no reason why named McKinney would not fairly and adequately protect the interests of the class. In addition, the Court is also convinced that McKinney's counsel, who are experienced

---

[10] It is well within the Court's authority to redefine McKinney's proposed class. *See* 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1759 at 130-31 (3d ed. 2005) ("[I]f plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23."); *see also* ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 8:12, at 200 (4th ed. 2002) ("When a class definition is not acceptable, judicial discretion can be utilized to save the lawsuit from dismissal.").

in class litigation and who have vigorously pursued the claims in this case, are adequate to represent the putative class. Therefore, McKinney has satisfied the adequacy requirement of Rule 23(a)(4).

**D. Rule 23(b) Factors**

McKinney seeks to certify her proposed class under Rule 23(b)(3), which requires her to establish that "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The two components of this standard are commonly referred to as the "predominance" and "superiority" requirements.

### 1. Predominance

The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Generally speaking, "predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *Cohen*, 522 F. Supp. 2d at 116 (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)).

The Postal Service does not meaningfully dispute that common questions of law and fact predominate over individualized issues concerning putative class members' claims. At most, the Postal Service argues, in conclusory fashion, that the Court will be required to resolve "individual" factual questions regarding "when each beneficiary became aware of the [arbitration] award." (Def.'s Opp'n at 23). While not entirely clear, the Court understands the

17

Case 1:11-cv-00631-RLW Document 42 Filed 01/16/13 Page 18 of 20
SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION
IN THE OFFICIAL REPORTERS

Postal Service to be arguing that the task of determining when the statute of limitations accrued for each potential class member will be an individualized inquiry that renders class treatment inappropriate. But as set forth above, the Court has narrowed McKinney's proposed class to exclude former employees and other beneficiaries whose claims would be time-barred by the statute of limitations. Even if those rulings do not obviate the Postal Service's concerns entirely, the Postal service does not explain why it will be difficult to determine when a potential class member received notice as defined above. To the extent that any individual statute-of-limitations issues remain, the Court is confident that they can be easily resolved without jeopardizing the overall class-wide nature of McKinney's claims. Accordingly, in view of the common issues of law and fact underlying the potential class members' claims in this case, as explained in the Court's commonality analysis above, McKinney has satisfied the predominance requirement of Rule 23(b)(3).

### 2. Superiority

In addition to finding predominance, this Court must also consider whether the class action mechanism is "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). In reaching this determination, the Court should consider: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.* A case generally meets this requirement when "common questions of law or fact

permit the court to consolidate otherwise identical actions into a single efficient unit." *Bynum*, 214 F.R.D. at 40.

The Postal Service principally focuses on the "manageability" aspect of the superiority inquiry, arguing that, at least with respect to a portion of McKinney's proposed class, the litigation of their claims on a class-wide basis would be unmanageable. More specifically, the Postal Service explains that it has engaged in "ongoing and reasonable efforts" to notify many additional beneficiaries since 1987, and that, as of December 2012, the Postal Service has been unable to locate 1,142 outstanding beneficiaries, despite its best efforts. (Def's Opp'n at 23-25). In turn, the Postal Service argues that it will be extremely difficult, if not impossible, to locate these particular putative class members to provide the notice required by Rule 23(c)(2), which, in its view, renders at least some of McKinney's proposed class unmanageable. (*Id.*).[11]

For her part, McKinney does not categorically disagree with this analysis, but she argues that finding this particular segment of the proposed class unmanageable at this juncture would be premature, without at least affording her and her counsel an opportunity to locate the as-of-yet unfound beneficiaries. (Pl.'s Reply at 17-19). She asks for the opportunity to track down some of these individuals, using a representative sample of fifty (50) putative class members from information provided by the Postal Service. Depending on the results of those efforts, McKinney argues, the Court can make a manageability determination at that time. (*Id.*). At the hearing on this matter, counsel for the Postal Service did not have any objection to proceeding in this

---

[11] At oral argument, the Court asked whether the Postal Service was arguing that McKinney's claims are atypical of the claims of these putative class members, inasmuch as McKinney's claims are limited to unpaid interest on additional benefits, while these other members would presumably also seek to recover the additional, underlying benefits payments in addition to any interest owed on those amounts. Counsel for the Postal Service confirmed that the Postal Service did not advance any such argument. Instead, its objection to including these individuals in the proposed class was based strictly on manageability concerns.

fashion, provided that an appropriate protective order was in place to govern the disclosure of sensitive personal and contact information that would be exchanged.

Given the parties' agreement on the issue, the Court concludes that McKinney's proposed approach is appropriate. Therefore, the Court will defer its ruling as to whether McKinney's proposed class satisfies the "superiority" prong of Federal Rule 23(b)(3) pending McKinney's efforts to locate additional beneficiaries, in accordance with the procedures laid out in the accompanying Order.

## **CONCLUSION**

For the reasons set forth above, the Court concludes that McKinney has satisfied all of the requisite elements of Federal Rule of Civil Procedure 23(a), as well as the "predominance" component of Rule 23(b)(3). However, the Court reserves a ruling as to the "superiority" factor of Rule 23(b)(3)—and, by implication, a final ruling on McKinney's Motion for Class Certification—pending the results of McKinney's efforts to track down additional putative class member beneficiaries, in accordance with the procedures set forth in the accompanying Order. An appropriate Order accompanies this Memorandum Opinion.

Date: January 16, 2013

                                                                                    ROBERT L. WILKINS
                                                                                    United States District Judge