UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**PAMELA McKINNEY**,

      Plaintiff,

      v.

**UNITED STATES POSTAL SERVICE**,

      Defendant.

Civil Action No. 11-cv-631 (RLW)

## MEMORANDUM OPINION

This matter is once again before the Court on Plaintiff Pamela McKinney's ("McKinney") Motion for Class Certification. (Dkt. No. 38). In a prior Memorandum Opinion, the Court found that McKinney satisfied all of the factors under Federal Rule of Civil Procedure 23(a), as well as the "predominance" prong of Rule 23(b)(3). *See McKinney v. U.S. Postal Serv.*, No. 11-cv-631 (RLW), 2013 WL 164283 (D.D.C. Jan. 16, 2013). At the parties' request, however, the Court deferred a ruling on the "superiority" element of Rule 23(b)(3)—whether a class action would be superior to other methods of adjudication—to provide McKinney's counsel a chance to locate additional beneficiaries who might be included in the proposed class. *See id.* at *10-11. Those efforts are now complete, and the parties submitted a joint status report on May 8, 2013, outlining their respective proposals with respect to moving forward. (*See* Dkt. No. 49). The Court also held a hearing on May 21, 2013.

Having considered the parties' status report and the presentation of counsel during the recent hearing, the Court is now convinced that McKinney's proposed class—including the previously "unfound" beneficiaries—satisfies all of the requirements for class certification, including the "superiority" element of Rule 23(b)(3). Accordingly, for the reasons set forth

1

herein and in the Court's earlier Memorandum Opinion, Plaintiff's Motion for Class Certification is hereby **GRANTED**.[1]

## BACKGROUND AND PROCEDURAL HISTORY

As noted, the Court already concluded that McKinney met the "predominance" element of Rule 23(b)(3), which means that, at this juncture, the only open question is whether the class action device is "superior" to other methods of adjudicating the claims McKinney pursues.

On this point, the Postal Service previously challenged—and continues to challenge—only one discrete component relevant to the issue of superiority. The Postal Service argues that certain "manageability" problems render certification inappropriate, at least as to a particular subset of previously "unfound" beneficiaries that McKinney seeks to represent. (*See* Dkt. No. 39 at 23-26). Because the Postal Service had been unable to locate these individuals using last-known address information, despite repeated attempts to do so, the Postal Service originally argued that including this group of approximately 1,100 "unfound" beneficiaries in any certified class would render the case unmanageable. (*See id.*). McKinney insisted otherwise, but offered a compromise solution—allowing her counsel the chance to locate a representative sample of "unfound" beneficiaries before the Court decided whether the issue presented insurmountable management problems under Rule 23(b)(3). (*See* Dkt. No. 41 at 18-19). Based on the results of those efforts, McKinney offered, she would decide whether to seek inclusion of these "unfound" beneficiaries in the proposed class she seeks to represent. (*Id.*). As the Postal Service had no objection to this approach, the Court deemed it appropriate to proceed in this fashion.

---

[1] The Court presumes familiarity with the factual background and legal discussion set forth in its earlier opinion, and only repeats those aspects of its prior analysis and the parties' respective arguments that are necessary for purposes of the instant ruling.

Subsequently, on May 8, 2013, the parties submitted a status report summarizing the results of these search efforts. As detailed therein, McKinney's counsel located and successfully contacted 14 beneficiaries who are still alive, and made contact with the heirs or personal representatives of another 22 beneficiaries who are now deceased. (*See* Dkt. No. 49). Additionally, in another 9 instances, McKinney's counsel "located the beneficiary or a close family member, but ha[d] not yet successfully made contact with the person." (*Id.*). In summary, McKinney's counsel indicated that, "out of a universe of 49 names, [putative] class counsel have successfully located 45 beneficiaries or heirs of beneficiaries, of whom counsel made contact with 36." (*Id.*).[2] McKinney maintains that the Postal Service's manageability concerns are vitiated by these results and asks the Court to certify her proposed class at this time. She also requests that the Postal Service identify and provide information surrounding the remaining "unfound" beneficiaries, so that her counsel can pursue similar search efforts to locate those individuals over the next six months. In addition, McKinney proposes that the parties commence a discovery period of four months, after which time they can proceed with dispositive motions on any substantive issues related to her proposed class claims.

For its part, the Postal Service agrees that McKinney's counsel should be allotted an additional six-month period to locate the remaining "unfound" beneficiaries, and it agrees to produce files for the remaining "unfound" individuals to whom a supplemental death benefit has not yet been paid. Additionally, the Postal Service agrees that any class notice under Rule

---

[2] According to the status report, upon receiving the beneficiary information from the Postal Service, McKinney's counsel utilized the following search methods in an effort to locate "unfound" beneficiaries: "(1) Westlaw's People Map tool; (2) Lexis's Comprehensive Person Report tool; (3) WhitePages.com; (4) Google searches; (5) online records searches of and phone calls to government agencies, including courthouses, county clerks, probate offices, recorders of wills, and property assessors; and (6) phone calls and letters to beneficiaries and their relatives." (Dkt. No 49 at 2-3).

3

23(c)(2) should be deferred until the conclusion of this six-month search period, and the Postal Service also agrees that the parties should commence discovery for a period of four months. But the Postal Service disagrees that class certification is appropriate now. The Postal Service argues that the Court should defer its certification ruling until the close of the additional six-month search period because of further manageability concerns. The Postal Service contends that, along with the difficulties in tracking down "unfound" beneficiaries in the first place, the Court and the parties will face substantial management challenges where the original beneficiary is now deceased, because confirming the rightful recipient of any payment would entail a number of logistical challenges, including the application of various state and local laws. In the Postal Service's view, "Plaintiff must identify the putative class members, *i.e.* the proper life insurance beneficiary under federal [law] and/or the proper estate beneficiaries under state law before the close of the opt-out period." (Dkt. No. 49 at 15-16).

McKinney's counsel rejoins that, while these concerns may require attention at some stage in this litigation, these issues are largely irrelevant to the question of whether this case should be certified as a class action in the first place.

Following the hearing on May 21, 2013, the Court took the matter under advisement.

## ANALYSIS AND APPLICATION OF RULE 23(b)(3)

Along with the four prerequisites for class certification under Federal Rule of Civil Procedure 23(a), McKinney "must also show that [her] claims fit within one of the subsections of Rule 23(b)." *Love v. Johanns*, 439 F.3d 723, 727 (D.C. Cir. 2006) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-16 (1997)). McKinney seeks to certify her proposed class pursuant to Rule 23(b)(3), which permits a case to be maintained as a class action where "the court finds that questions of law or fact common to class members predominate over questions

affecting only individual members, and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). In reaching this determination under Rule 23(b)(3), the Court is to consider, among other matters:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* Since the Court already ruled that McKinney's claims satisfied the predominance prong of Rule 23(b)(3), at this point, only the "superiority" question remains. And while there is no "bright-line rule" on how to interpret Rule 23(b)(3), this Court has previously noted that "the proper standard is a 'pragmatic' one." *Hardy v. District of Columbia*, 283 F.R.D. 20, 26-27 (D.D.C. 2012) (quoting 7AA CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1778, at 121 (3d ed. 2005) (hereinafter "WRIGHT & MILLER"), and 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.45 (3d ed. 2007)). Moreover, as the Advisory Committee Notes explain, Rule 23(b)(3) "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* (quoting FED. R. CIV. P. 23(b)(3) advisory committee's note).

Applying this framework, particularly in the "pragmatic" sense it was intended to operate, the Court is convinced that McKinney has made the requisite showing under Rule 23(b)(3) and that the class action device is superior to other methods of resolution. "Class actions are the superior method when they serve the purpose of efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *Alliota v. Gruenberg*, 237 F.R.D. 4, 13

(D.D.C. 2006); *Barnes v. District of Columbia*, 242 F.R.D. 113, 123-24 (D.D.C. 2007) ("The second prong of Rule 23(b)(3) militates in favor of class actions where common legal or factual questions allow a court to consolidate otherwise identical actions into a single efficient unit.") (internal citation and quotation omitted).  In this case, the claims of all of the proposed class members, including those of the so-called "unfound" beneficiaries, all turn on the same legal issue: whether the Postal Service is obligated to pay interest on additional death benefit payments.  Resolving this uniform legal issue through a single, cohesive proceeding is far superior to requiring the potential class members to initiate a multiplicity of individual actions. Moreover, given the relatively small size of each individual class member's potential recovery,[3] it is unlikely that many putative plaintiffs could or would sue to recover those amounts individually, given the comparatively high costs of litigation.  *See Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

In challenging McKinney's ability to satisfy Rule 23(b)(3), the Postal Service advances only one argument.  It contends that the difficulties in locating "unfound" beneficiaries, and in confirming the appropriate heir or personal representative of those class-member beneficiaries who are now deceased, present manageability concerns that render class treatment inappropriate.  To be sure, manageability is one aspect of the Court's calculus under Rule 23(b)(3).  But case management difficulties cannot be viewed in isolation, as the Postal Service effectively urges here.  *See* NEWBERG ON CLASS ACTIONS § 4:32, at 277 (4th ed. 2002) ("[M]anageability is only one of the elements that goes into the balance to determine the superiority of a class action in a

---

[3]  By way of example, McKinney seeks to recover unpaid interest on a principal amount of approximately $4,000.00.

particular case.  Other factors must also be considered, as must the purposes of Rule 23, including: conserving time, effort, and expense; providing a forum for small claimants; and deterring illegal activities.").  While some of the logistical factors highlighted by the Postal Service may require particular attention in this case moving forward, these management considerations do not, in this Court's view, render class adjudication inferior to thousands of individual actions or some other method of resolution.  Furthermore, considering McKinney's counsel's success in tracking down a sizeable percentage of the prior sample of "unfound" beneficiaries, the Postal Service's concerns may be largely overstated.[4]

Relatedly, the Postal Service misses the mark in suggesting that McKinney must definitively confirm and identify all of the putative class members "before the close of the opt-out period."  (Dkt. No. 49 at 15-16).  Upon certifying a class, the Court need only ensure that appropriate notice is provided to class members in accordance with Rule 23(c)(2).  As the Supreme Court has explained, "[t]o alert class members to their right to 'opt out' of a (b)(3)

---

[4] Although not proposed by either party, the Court independently considered whether the use of subclasses might be appropriate to resolve the added complications surrounding deceased beneficiary class members—i.e., such that the Court would certify one subclass comprised of beneficiaries who are still living, and another subclass comprised of the estates or legal representatives of deceased class-member beneficiaries.  *See* FED. R. CIV. P. 23(c)(5).  But there are no divergent liability issues with respect to these two potential categories of class members, and the same alleged harm underpins all of their claims (i.e., the Postal Service's failure to pay interest on death benefit payments); as such, the use of subclasses appears unnecessary, and the Court is confident that any logistical concerns can be managed within a single class of beneficiaries.  *But cf. DL v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013) (remanding certification ruling to district court to determine whether the implementation of proposed subclasses, each encompassing class members who experienced a different type of alleged harm under the Individuals with Disabilities Education Act, might remedy commonality problems under Rule 23(a)).  Moreover, the Postal Service has not argued (and the Court does not find) that McKinney is an inadequate representative of the deceased-beneficiary subset of the proposed class she seeks to certify.  *Contra Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (observing that "the use of a subclass makes it possible to preserve the class action form where the named representative cannot be found to adequately represent all the interests in the class").  The Court therefore does not find the use of subclasses appropriate or necessary in this case, particularly given that neither party urges such a result.

7

class, Rule 23 instructs the court to 'direct to the members of the class *the best notice practicable* under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Amchem Prods.*, 521 U.S. at 617 (citing FED. R. CIV. PROC. 23(c)(2)(B)) (emphasis added); *see also Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485-86 (D.C. Cir. 1992) (reiterating that Rule 23(c)(2) only requires "the best notice practicable"). In essence, the Postal Service's complaint here is that certain class members may not receive individual notice under Rule 23(c), either because the beneficiary remains "unfound" or because the original beneficiary is now deceased and the proper recipient of any award in his or her stead might be unclear. But Rule 23(c) does not require individual notice be provided to all class members; it only requires individual notice to those who can be identified through reasonable effort. *See* NEWBERG ON CLASS ACTIONS § 4:35, at 309 ("When identification of class members for notice purposes poses a complex problem from a manageability perspective, then such members cannot be reasonably identified within the meaning of Rule 23(c)(2) and are not entitled to individual notice."). *Cf. Bynum v. District of Columbia*, 214 F.R.D. 27, 40 (D.D.C. 2007) ("[S]ending notices to the last known address for each . . . member of the class, and whose current address cannot be identified through reasonable efforts (e.g., Internet searches), will satisfy the 'individual notice' requirement of the Rule"). In sum, the remaining "manageability" arguments invoked by the Postal Service are insufficient to defeat class certification.

At the same time, the practical challenges the Postal Service highlights are not altogether unimportant to the management of this litigation moving forward. To the contrary, the apparent challenges in tracking down "unfound" beneficiaries—and in locating the estates or legal representatives of "unfound" beneficiaries who are now deceased—undoubtedly merit reflection, both by the Court and by counsel, to ensure that these proceedings achieve the purposes behind

Rule 23, while also protecting the rights of absent class members. For example, although Rule 23(c)(2) requires only the "best notice practicable," and individual notice to members who can be identified through "reasonable efforts," these are pragmatic standards that can vary depending on the specific contours of a particular case. In this case, for example, "reasonable efforts" to provide notice to the estate or representative of an "unfound" beneficiary who is now deceased will necessarily entail some additional steps than might be required for purposes of providing notice to an "unfound" beneficiary who is still living. The parties must judiciously and comprehensively consider these issues.[5] Additionally, in the event that an exclusion or "opt out" request is received from the estate of a deceased class member, it may be necessary to somehow confirm that the individual submitting the request actually has the authority to act on the deceased class member's behalf. The parties may need to consider devising a method to address these concerns.[6] And if McKinney ultimately prevails on the merits of her claims, it may be appropriate to require class members to establish their entitlement to any award of damages (such as through the submission of a claim form), particularly in the case of class members who claim to be the heir or legal representative of the original beneficiary of the underlying death

---

[5] In the parties' recent status report, there was some suggestion that McKinney believes that beneficiaries who remain "unfound" following additional search efforts should be excluded from the certified class, or at least that the Court could defer a definitive ruling on this question until the end of the six-month search period. But, as the Postal Service rightly points out, such a result would seem to deprive the Postal Service of the benefit of finality that class litigation affords defendants. *See, e.g.*, *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 427 (4th Cir. 2003) (explaining that, among other objectives, class actions provide "defendants the benefit of finality and repose"). The Court thus declines McKinney's invitation to exclude, on a categorical basis, beneficiaries who ultimately remain "unfound" from the certified class.

[6] For example, this could potentially be accomplished by requiring, as a component of the "opt-out" request itself, an attestation from the signatory confirming that he or she is validly acting on behalf of the estate of the designated beneficiary (or otherwise possesses the legal authority to act on behalf of the deceased class member). *See, e.g.*, *Perry v. Beneficial Fin. Co. of N.Y.*, 88 F.R.D. 221, 222-23 (W.D.N.Y. 1980) (approving exclusion request signed by the administratrix of the class member's estate).

benefit payment. This is by no means an exhaustive list of possible issues, but counsel are encouraged to consider these practicalities and others as this case presses onward.

Finally, on the issue of class notice, the Federal Rules do not prescribe a specific timeline for the issuance of class notice under Rule 23(c)(2). It is generally recognized that such notice should be provided "as soon as practicable after the court determines that the class action is proper." WRIGHT & MILLER § 1788, at 529-30; *see also* NEWBERG ON CLASS ACTIONS § 8:9, at 192 ("[I]f notice is to be effective—if class members are to have a meaningful opportunity to request exclusion, appear in the action, object to the representation, etc.—the invitation must go out as promptly as the circumstances will permit."). And at a minimum, "[c]ertification under Rule 23(b)(3) would require that the class members receive notice of the suit 'well before the merits of it are adjudicated.'" *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 (11th Cir. 2000) (quoting *Schwarzchild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995)). However, "the court may decide to postpone giving formal notice under Rule 23(c)(2) if there is a reason for the delay and it would not prejudice those class members who are not before the court." WRIGHT & MILLER § 1788, at 530. In this case, the Court believes it appropriate to defer the issuance of Rule 23(c)(2) class notice pending the completion of the additional six-month search period agreed upon by the parties. This added time will allow McKinney's counsel to locate more accurate information for many other previously "unfound" class members, which, in turn, will help to ensure that the notice ultimately issued constitutes the "best notice practicable" under the Federal Rules.[7] Moreover, while the parties will be engaging in discovery efforts during this time period, they have agreed in their status report to defer any briefing on the merits of McKinney's claims until

---

[7]   In the interim, and as set forth more fully in the accompanying order, the parties should meet and confer with respect to the scope of McKinney's counsel's additional search efforts for "unfound" beneficiaries, and they should attempt to reach consensus on the specific search measures that they believe constitute "reasonable efforts" to track down "unfound" beneficiaries.

after the expiration of the additional search period. Therefore, this minimal delay should not result in any prejudice to absent class members because the Court can still ensure that notice is issued sufficiently in advance of any merits adjudication to preserve their ability to opt out, to weigh intervention, or to otherwise involve themselves with this action as they may deem appropriate.

## CONCLUSION

For the reasons explained herein, the Court concludes that McKinney satisfies the "superiority" prong of Rule 23(b)(3). Therefore, having previously found the remaining elements of Rule 23(a) and 23(b)(3) met, *see McKinney*, 2013 WL 164283, the Court **GRANTS** McKinney's Motion for Class Certification and certifies the following class:

> All beneficiaries of deceased United States Postal Service employees (or, if deceased, the beneficiaries' estates or other legal representatives), who first received notice on or after March 28, 2008, that they may be entitled to an additional death benefit payment under provisions of the U.S. Postal Service Annuity Protection Program.

The Court also approves Plaintiff Pamela McKinney as Class Representative, and the Court appoints David U. Fierst and Robert L. Bredhoff as class counsel pursuant to Rule 23(g).

An appropriate Order accompanies this Memorandum Opinion.

Date: May 31, 2013

                                                            ROBERT L. WILKINS
                                                            United States District Judge