**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PAMELA McKINNEY,** | |
| Plaintiff, | |
| v. | Case No. 1:11-cv-00631 (CRC) |
| **UNITED STATES POSTAL SERVICE,** | |
| Defendant. | |

## MEMORANDUM OPINION

In 1986, an arbitrator determined that the United States Postal Service had underpaid life insurance benefits to thousands of beneficiaries of deceased postal workers. But rather than promptly locating and paying eligible beneficiaries, the Postal Service dawdled. Many beneficiaries were made to wait decades to receive payment and some still have not been located and paid. Named plaintiff Pamela McKinney, whose father died in 1982 while employed by the Postal Service, is one such beneficiary. The Postal Service did not pay her the benefits she was due until 2008, some 22 years after the arbitrator's decision. McKinney has brought suit against the Service on behalf of a class of beneficiaries who suffered similar delays. She alleges that the Postal Service's delay in payment violated the arbitration award and breached the collective bargaining agreement between the Postal Service and its employee unions, which required the additional payments in the first instance. As a remedy, McKinney and the other plaintiffs seek interest on the underpaid amounts to compensate them for their loss of use of the funds. Despite the Postal Service's arguments to the contrary, the Court concludes that McKinney's suit is properly before it, that no genuine question of fact exists as to whether the Postal Service violated the arbitration award and the underlying collective bargaining agreement, and that McKinney and her fellow class members are entitled to interest on the long-delayed payments. It will therefore grant partial

summary judgment in favor of McKinney as to Plaintiffs' entitlement to interest and deny summary

judgment to the Postal Service.[1]

## I.    Background

In 1981, the United States Postal Service and its employees' unions[2] agreed to defer a cost

of living adjustment ("COLA") to postal employees' salaries until 1984.  Pls. Ex. 1 at 19–20 ("1981

CBA").  The parties memorialized this agreement in an addendum to their collective bargaining

agreement ("CBA"), which guaranteed that "no employee . . . will suffer any diminution of annuity

(e.g., optional disability, or survivor benefits)" as a result of the COLA deferral.  Id. at 163

(Supplemental Memorandum of Understanding).  The parties also reached an oral understanding

that "no one will get hurt" by the deferral.  Id. Ex. 2 at 1 ("Kerr Award").  Despite these promises,

the Postal Service paid life insurance benefits to beneficiaries of employees who died between 1981

and 1984 based on the employees' then-current wages, without increasing the benefit to account for

---

[1]  Specifically, as explained in detail below, the Court will:

- grant summary judgment for Plaintiffs on their breach of contract claim (Count I) as to the issues of interest and the Postal Service's liability for the outstanding underlying life insurance benefits;

- grant summary judgment for the Plaintiffs on their arbitral enforcement claim (Court II) as to the category of Plaintiffs who have not yet received the underlying benefits and reserve judgment on both sides' motions as to those Plaintiffs who have already received the underlying benefits; and

- reserve judgment both sides' motions for summary judgment on Plaintiff's claim for unjust enrichment (Count III).

The Court does not address at this time Plaintiffs' claim for an accounting (Count IV), as to which Plaintiffs have not sought summary judgment.  Plaintiffs have also filed a motion to supplement the record, which the Court will grant.

[2]  The relevant postal service employees are represented by two different unions, the National Association of Letter Carriers and the American Postal Workers Union.  Compl. ¶ 8.

the missing COLA.[3]  The unions subsequently compelled arbitration of the Postal Service's

calculation of benefits.  In 1986, the arbitrator, Clark Kerr, determined that benefits should have

been paid based on the employees' COLA-adjusted salaries and ordered that "full remedy should be

awarded to the survivors of deceased postal employees who have suffered a diminution of life

insurance benefits."  Id. at 2–3.  Arbitrator Kerr did not decide, however, whether beneficiaries

were entitled to interest on the underpaid amounts, leaving "open for discussion by the parties the

issue of interest payments on any remedies since this was not adequately explored before him."  Id.

at 4.  The Postal Service and unions entered into several additional CBAs over the course of the

following two decades that deferred COLA payments from 1984 to 1987, from 1987 to 1990, and

from 1990 to 1995.  Id. Ex. 4–6 (1984, 1987, and 1990 CBAs).  It appears from the record that the

Postal Service did not use employees' COLA-adjusted salaries to calculate life insurance benefits in

the first instance even after the Kerr Award directed it to do so.  Instead, it continued to pay

survivors the lower amount and only paid the remainder later, as described in further detail below.

   In negotiations following the arbitral award, the Postal Service sent the unions a letter

stating, among other things, that "during our discussion the issue of interest payments on remedies

was raised and we responded by stating that interest payments were inappropriate.  Lacking any

comment to the contrary from you, we will assume that this issue is behind us."  Def. Ex. 10 (Jan.

21, 1987 letter from William Downes, Director, Office of Contract Administration, Postal Service,

to William Burrus, Executive Vice President, American Postal Workers Union, and Lawrence G.

Hutchins, Vice President, National Association of Letter Carriers).  The unions' response did not

---

[3]  For the sake of clarity: suppose an employee made $30,000 per year and, if not for the CBA,
would have received a $1,000 per year cost of living adjustment in 1981.  If that employee died in
1982 with a life insurance policy that paid a year's wages, the employee's beneficiary would have
only received $30,000 instead of $31,000 because of the Postal Service's interpretation of the CBA.
The Court will refer to the difference between these two amounts as the COLA-adjusted principal
or COLA-adjusted payment.

mention interest payments.  Id. Ex. 11 (Jan. 27, 1987 letter from William Burrus to William

Downes).

After concluding negotiations with the unions, the Postal Service began satisfying the Kerr

Award by attempting to locate beneficiaries and to date has paid over $70,292,233 in COLA-

adjusted benefits to 16,595 survivors.  Id. Ex. 32 (Declaration of Carol Carlson, Postal Service

Accounting and Control Specialist) ¶ 6.  The Postal Service tracked down most beneficiaries by

sending letters to addresses it had on file.  Where it lacked addresses, the service searched the phone

book or a commercially-available locator database.  Id. ¶ 7.  Despite these efforts, the Postal Service

ceased searching in 2010 after determining that there were 1,142 beneficiaries who still could not

be located, although it continued to pay beneficiaries who came forward on their own.  Id.  The

Postal Service paid beneficiaries the difference in principal owed under the relevant life insurance

policy at the time of the policyholder's death but did not pay accrued interest during the period

between death and the payment.  See id. ¶¶ 4–5.

Named Plaintiff Pamela McKinney's father died in 1982 while employed by the Postal

Service.  Declaration of Pamela McKinney ¶¶ 2–3.  McKinney received her COLA-adjusted life

insurance benefit under the Kerr Award in 2008, without interest for the 26-year delay in payment.

Id. ¶¶ 4–6.  She has brought suit on behalf of all life insurance beneficiaries who were paid or were

entitled to payment under the arbitral award, seeking both the remaining principal amounts for the

unpaid beneficiaries and interest for all beneficiaries.  Second Am. Compl. ¶ 35.  She has brought

claims for breach of the CBA (Count I), unjust enrichment (Count II), conversion (Count III),

enforcement of the arbitral award (Count IV), and for an accounting (Count V).  Id. ¶¶ 44–55.

Judge Wilkins, who was previously assigned to this case, granted the Postal Service's

motion to dismiss McKinney's conversion claim but allowed all of her other counts to proceed.  He

rejected the Postal Service's argument that the Court lacked jurisdiction, reasoning that McKinney

may properly bring an action to enforce the arbitral award in federal court.  Hearing Tr. 4:12–5:7

(Aug. 27, 2012).  He also held that McKinney need not exhaust administrative grievance procedures

under federal labor law before bringing suit because the postal unions owed McKinney—who had

never been a postal service employee or union member—no duty of fair representation.  Id. 5:8–6:6.

Judge Wilkins further determined that McKinney's claims were not rendered moot by the payment

of the COLA-adjusted principal because her entitlement to interest remained a live controversy,

explaining "the only interest that could have been considered by the arbitrator was interest that

would have accrued up until the time of the arbitration."  Id. 7:1–15.  He proceeded to certify the

following class of plaintiffs:

> All beneficiaries of deceased United States Postal Service employees (or, if
> deceased, the beneficiaries' estates or other legal representatives), who first received
> notice on or after March 28, 2008, that they may be entitled to an additional death
> benefit payment under provisions of the U.S. Postal Service Annuity Protection
> Program.

Order (May 31, 2013).

Plaintiffs have now filed a motion for partial summary judgment only on the issue of the

Plaintiffs' entitlement to interest on the COLA-adjusted benefits, and the Postal Service has cross-

moved for summary judgment on all of Plaintiffs' remaining claims.  As of the filing of these

motions, Plaintiffs maintain there are 1,002 beneficiaries who received notice from the Postal

Service that they are entitled to the COLA-adjusted principal after the class definition cutoff date

("paid beneficiaries") along with 1,142 beneficiaries who are entitled to an arbitral award payment

but have not received it because the Postal Service has failed to locate them ("unpaid

beneficiaries").  Pls. Statement of Undisputed Facts ¶¶ 34–35.

## II.    Standard of Review

Summary judgment is appropriate where the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is "no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must

draw all reasonable inferences in favor of the moving party, but the nonmovant must produce

material facts showing that there is a genuine dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247–48 (1986).  A dispute is genuine if there is sufficient admissible evidence for a reasonable

jury to find for the non-movant, and a fact is material if it might affect the outcome of the suit.  Id.

at 248.

### III.   Analysis

It should be emphasized at the outset what is *not* at issue in this case: whether the Postal

Service owes eligible beneficiaries COLA-adjusted principal payments.  The Service acknowledges

that both the CBA and the 1986 Kerr Award require it to pay COLA-adjusted benefits.  Def. Mem.

in Supp. of Mot. for Summ. J. ("Def. Mem.") at 21.  Indeed, it has made COLA-adjusted principal

payments to some 16,595 beneficiaries and represents that it stands ready to do so for all remaining

beneficiaries who can be located and verified.  Def. Statement of Material Facts ¶¶ 48–50.  What *is*

at issue is whether Plaintiffs are entitled to receive interest on the COLA-adjusted benefits to

account for the Postal Service's delay in payment following the Kerr Award.  Plaintiffs contend that

they are entitled to interest due to the Service's delay—which in some cases stretched for decades—

as compensation for their inability to use the unpaid amounts during that period.

The Postal Service raises a host of arguments in opposition to Plaintiffs' claims.  At the

threshold, it contends that Plaintiffs' breach of contract claim is not properly before the Court

because it is preempted by federal labor law.  On the merits, the Postal Service argues that awarding

interest would be inconsistent with both the CBA and the Kerr Award and, at a minimum, that the

Kerr Award contains ambiguities with respect to the availability of interest that should be remanded

to the arbitrator to resolve.  It also argues that even if Plaintiffs have a right to interest: (1) the

unions waived any claim for interest during negotiations concerning the implementation of the Kerr

Award, and (2) the Service should be relieved from paying interest under the "doctrine of impossibility" because, essentially, it would have been too difficult for it to pay COLA-adjusted benefits in a more timely manner.  Finally, the Plaintiffs raise two additional claims for relief for the first time in their summary judgment motion: one for tax set-offs and another for accidental death benefits.  The Court will address the parties' positions in turn.

A.  Preemption and Exhaustion

The Postal Service contends that Plaintiffs' breach of contract claim is preempted by federal labor law, which requires plaintiffs to exhaust applicable grievance procedures before bringing any claim that requires interpretation of a collective bargaining agreement.  Def. Mem. at 13–14 & n.5; see Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405–406 (1988).  The Service maintains the claim must be dismissed because the relevant CBA requires the unions to bring a grievance on behalf of these Plaintiffs, which the unions have not done.[4]  Id.  Judge Wilkins previously rejected this argument, finding that the Plaintiffs' claim is not preempted because the Kerr Award had already crystalized the meaning of the relevant provisions of the CBA, and therefore the Court need not interpret the agreement.  Hearing Tr. 4:12–5:7 (Aug. 27, 2012).  The Court likewise rejects the Service's preemption argument, but for a different reason.

The Plaintiffs bring their breach of contract claim under 39 U.S.C. § 1208(b), which explicitly permits suits in federal district courts for breaches of contracts by the Postal Service.  Id. ("[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties"); see also Nat'l Postal Mail Handlers

---

[4]  The Postal Service also claims that Plaintiffs' unjust enrichment claim is preempted.  Because the Court determines below that Plaintiffs may obtain interest under their breach of contract and arbitral award claims, it need not resolve at this juncture whether they may also bring an unjust enrichment claim.

Union v. U.S. Postal Serv., No. 13-1577 (CRC), 2014 WL 4536732 (D.D.C. Sept. 12, 2014).  As

the Postal Service points out, parties bringing suit under 39 U.S.C. § 1208(b) to enforce a CBA

generally must exhaust applicable grievance procedures before proceeding to federal court.  Lingle,

486 U.S. at 405–406 (1988); Cephas v. MVM, Inc., 520 F.3d 480, 484 (D.C. Cir. 2008).  As Judge

Wilkins observed, however, Plaintiffs here *cannot* proceed via the grievance procedure contained in

the CBA because they are not union members or employees.  Hearing Tr. 5:8–6:6 (Aug. 27, 2012);

see also Def. Ex. 30 (Declaration of Patrick M. Devine), Ex. 1 Art 15 (CBA Grievance-Arbitration

Procedure) (describing process by which employee or union may bring grievance procedure and

only permitting unions to initiate arbitration).  Third-parties are not required to exhaust grievance

procedures in a CBA if its terms do not demonstrate that the grievance procedures apply outside of

disputes between employees and the employer.  See Schneider Moving & Storage Co. v. Robbins,

466 U.S. 364, 376 (1984) (exhaustion requirement did not apply to third-party employee benefits

trust fund where the collective-bargaining agreement did not "evidence any intent to condition the

contractual right of the trustees to seek judicial enforcement of the trust provisions on exhaustion");

Anderson v. Alpha Portland Indus., Inc., 752 F.2d 1293, 1297 (8th Cir. 1985) (applying Schneider

to excuse exhaustion requirement in suit by retirees).  Plaintiffs therefore are not bound by a CBA

exhaustion requirement.

       The Postal Service retorts that the unions could bring a grievance on Plaintiffs' behalf.  As

the Postal Service well knows, however, the unions do not represent the interests of the

beneficiaries because they are not and have never been union members or postal employees.  See,

e.g., Walker v. Consol. Freightways, Inc., 930 F.2d 376, 382 (4th Cir. 1991) (no duty of fair

representation owed to nonunion members); Pls. Ex. 20 (Deposition of Keith E. Secular, National

Association of Letter Carriers) 56:9–59:11 (the postal employees unions owe no duty of fair

representation to nonunion members).  Under the Postal Service's argument, it could choose to

renege on its obligation to pay life insurance benefits entirely, and the beneficiaries would have no

legal recourse: they could not bring independent claims in federal court without first exhausting

administrative grievance procedures; they could not initiate grievance procedures because they are

not union members or postal employees; and they could not sue the union for failing to bring

grievances on their behalf because the unions owe them no duty of fair representation.  Such a

result would be illogical and unjust.

### B.  Breach and Prejudgment Interest

Having determined that Plaintiffs' breach of contract claim is properly before the Court, the

Court must next consider whether Plaintiffs have established their claims for breach of the CBA and

enforcement of the Kerr Award and, if so, whether they are entitled to interest as a remedy.

Because the two categories of plaintiffs rest their claims on slightly different theories, the Court will

analyze their claims separately before then considering whether an award of interest would be

inconsistent with the Kerr Award and underlying CBA.

### i.  Unpaid Beneficiaries

The first category is the "unpaid beneficiaries," those plaintiffs who have never received the

missing COLA-adjusted principal on their life insurance claims because the Postal Service was

unable to locate them.  They seek summary judgment on their breach of contract and arbitral

enforcement claims on the argument that the Postal Service has failed to fulfil its obligations under

the CBA and Kerr Award to pay the COLA-adjusted principal.  They also seek prejudgment interest

as a judicial remedy to compensate them for the delay in payment of the underlying principal

payment.

### 1.  Breach of Contract and Arbitral Enforcement Claims

The elements of a breach of contract claim are "'(1) a valid contract between the parties; (2)

an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused

by breach.'"   Millennium Square Residential Ass'n v. 2200 M St. LLC, 952 F. Supp. 2d 234, 247

(D.D.C. 2013) (quoting Paulin v. George Wash. Univ. Sch. of Med., 878 F. Supp. 2d 241, 246

(D.D.C. 2012)).   An intended third party beneficiary has the right to enforce a contract against a

breaching promisor.   Bowhead Info. Tech. Servs., LLC. V. Catapult Tech. Ltd., 377 F. Supp. 2d

166, 173 (D.D.C. 2005).

        Subject to a set of defenses, a court is obligated to enforce an arbitral award resulting from a

labor dispute.   Office & Prof'l Employees Int'l Union, Local 2 v. Washington Metro. Area Transit

Auth., 724 F.2d 133, 140 (D.C. Cir. 1983).   Arbitrator Kerr determined that the annuity protection

provision of the 1981 CBA should be read to include life insurance benefits and, accordingly,

awarded "full remedy . . . to those survivors of deceased postal employees who have suffered a

diminution of life insurance benefits."   Pls. Ex. 2 at 2–3.

        The Postal Service acknowledges that the unpaid plaintiffs, as third party beneficiaries, are

entitled to life insurance benefits that include COLA-adjusted principal payments under the CBA

and the arbitral award.   Def. Opp'n at 12–13.   It nevertheless argues that its "delayed payments

even now do not violate" the CBA or arbitral award because neither specify a time at which the

Postal Service must make the COLA-adjusted principal payments.   Def. Mem. at 15–16.   This is

plainly wrong.   When life insurance benefits initially became due and the Postal Service did not

adjust payment for the deferred COLA, it breached the CBA.   The Postal Service was obligated to

cure this breach by paying beneficiaries within a reasonable time after their benefits became due.   It

also was obligated to pay benefits under the Kerr Award within a reasonable time after the award

was issued.   See, e.g., Independence Mgmt. Co. v. Anderson & Summers, LLC, 874 A.2d 862, 869

(D.C. App. 2005) ("[w]here no time is specified for the performance of an act, the law implies that

it must be done within a reasonable time." (citation omitted)).   Because the Service waited years or

decades after employees died to pay their life insurance beneficiaries the full amount owed, it has

breached the CBA and the Kerr Award as to the unpaid beneficiaries, and the Court will grant

summary judgment for the Plaintiffs on these claims as to the issue of the Postal Service's liability

for the COLA-adjusted principal as to the unpaid beneficiaries.

### 2.  Interest

"Prejudgment interest serves to compensate for the loss of money due as damages from the

time the claim accrues until judgment is entered, thereby achieving full compensation for the injury

those damages are intended to redress." West Virginia v. United States, 479 U.S. 305, 310 n.2

(1987); see also Oldham v. Korean Air Lines Co., 127 F.3d 43, 54 (D.C. Cir. 1997).  District of

Columbia law permits a plaintiff to recover prejudgment interest "'to the extent that it will make the

injured party whole.'"  Embassy of Fed. Republic of Nigeria, 945 F. Supp. 2d 81, 86 (D.D.C. 2013)

(quoting Duggan v. Keto, 554 A.2d 1126, 1140 (D.C. 1989)).  D.C. courts regularly award

prejudgment interest in enforcing arbitral awards.  See, e.g., In re Martin, 67 A.3d 1032, 1038 (D.C.

2013); Celtech, Inc. v. Broumand, 584 A.2d 1257, 1260 n.7 (D.C. 1991).  When enforcing an

arbitral award, federal courts have discretion to award prejudgment interest, subject to equitable

considerations.  See, e.g., Continental Transfer Technique Ltd. v. Fed. Gov't of Nigeria, 932 F.

Supp. 2d 153, 163 (D.D.C. 2013) (awarding prejudgment interest in enforcing foreign arbitral

award); Serv. Emp. Int'l Union, Local 722 v. Washington Hosp. Ctr., No. 82-2978, 1983 WL 2085,

at *4 (D.D.C. May 17, 1983) (awarding prejudgment interest in enforcing arbitral award in labor

dispute).  At least in the context of the enforcement of foreign arbitral awards, courts have

recognized a presumption in favor of prejudgment interest.  Continental Transfer Technique, 932

F. Supp. 2d at 163.

The Postal Service suggests that an award of interest is not appropriate in this case because

it has made good-faith attempts to comply with the Kerr Award.  While the Court has no reason to

doubt the Postal Service's good faith, it provides no authority for the proposition that good faith

overcomes the ordinary presumption in favor of prejudgment interest in enforcing arbitral awards. Even if the Postal Service exerted significant efforts to track down beneficiaries, Plaintiffs still deserve compensation for the delay in payment. In any case, the Postal Service is ultimately at fault for the delay because it should have paid COLA-adjusted benefits when the benefits originally became due to the Plaintiffs. The Service exacerbated the error by apparently continuing to withhold timely COLA-adjusted payments even after the arbitral decision. Because interest is necessary to compensate beneficiaries for the lost opportunity to use those payments, the Court may award interest to the unpaid beneficiaries so long as doing so would not be incompatible with the CBA or the Kerr Award.

### ii. Paid Beneficiaries

The second category of plaintiffs is the "paid beneficiaries," those like McKinney who have already received the missing COLA-adjusted principal from the Postal Service and only seek interest for the delay in payment. Because the paid beneficiaries have already received the COLA-adjusted principal, they cannot bring suit to enforce the Service's obligation to make that payment under the CBA and the Kerr Award. Their claims are based instead on the argument that the lengthy delay in payment of the COLA-adjusted principal constituted a separate breach of the CBA.[5]

A substantial delay in performance is a material breach of a contract if the delay causes damage to the plaintiff. Richard A. Lord, 23 Williston on Contracts § 63:18 (4th ed. 2009). Delay in payment inherently causes damage by depriving the plaintiff of the use of funds during the delay. Joseph M. Perillo, 11 Corbin on Contracts § 57.17. In recognition of these principles, "[i]n all

---

[5]  Because the paid beneficiaries would recover the same damages under a successful breach of contract claim as under a claim to enforce the Kerr Award, namely interest for the delay in payment, the Court need not address whether the paid beneficiaries are entitled to summary judgment on the Plaintiffs' arbitral enforcement claim.

jurisdictions simple interest at the statutory legal rate is recoverable as damages for non-payment of a liquidated debt from the date of breach if the parties involved have not themselves provided otherwise." Id. § 57.18; accord Royal Indem. Co. v. United States, 313 U.S. 289, 295–96 (1941) ("[a] suit upon a contractual obligation to pay money at a fixed or ascertainable time is a suit to recover damage for its breach, including both the principal amount and interest by way of damage for delay in payment of the principal after the due date."). Thus, a plaintiff may maintain an independent action for breach of contract based on a delay in payment. See Shatterproof Glass Corp. v. Libbey-Owens-Ford Co., 482 F.2d 317, 324 (6th Cir. 1973) (tender of amount due did not obviate debtor's obligation to pay interest for delay in payment in action for breach of contract); 4Kids Entm't, Inc. v. Upper Deck Co., 797 F. Supp. 2d 236, 252 (S.D.N.Y. 2011) ("Paying the invoice in full satisfies Plaintiffs' claim for the principal amount, but does not excuse the failure to make timely payment. Plaintiffs are entitled to damages in the form of interest commencing thirty days after the invoice was issued"); Ramsey v. United States, 101 F. Supp. 353, 356 (Ct. Cl. 1951) ("The law implies an agreement to make good the loss arising from a default in payment of money at a specified time by requiring the payment of lawful interest." (citing New Orleans Ins. Co. v. Piaggio, 83, U.S. 378, 384 (1872)).

Here, the paid beneficiaries were owed the additional COLA-adjusted principal as of the date their life insurance benefits became due, and, as discussed above, the Postal Service was obligated to pay within a reasonable time afterwards. Although it has since paid those beneficiaries the underlying COLA-adjusted benefit, the delay of years or decades harmed the paid beneficiaries by depriving them of the use of the money over that extended period. Interest here is simply the damages owed for the Postal Service's breach-by-delay, and the paid beneficiaries can recover interest so long as an award of interest is not inconsistent with the CBA and arbitral award.

### iii. Consistency with the Kerr Award and CBA

An award of prejudgment interest—meaning interest from the date liability was triggered to the date of a court's judgment—in enforcing an arbitral award cannot be inconsistent with the underlying arbitral award. Continental Transfer Technique, 932 F. Supp. 2d at 164 (citing Ministry of Def. and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Sys., Inc., 665 F.3d 1091, 1103 (9th Cir. 2011)). The CBA itself is silent on the issue of interest; thus an award of interest is not inconsistent with it. The Kerr Award discusses whether the Postal Service owes interest on the arbitral award itself, but the arbitrator explicitly declined to determine whether interest payments were appropriate, leaving "open for discussion by the parties the issue of interest payments on any remedies since this was not adequately explored before him." Arbitral Award at 4. Moreover, there is nothing in the record to indicate that the arbitrator, in discussing interest, considered post-award interest—i.e. interest that would accrue *after* his decision—as opposed to interest that accrued between the time of non-payment and the time of the award in 1986. Indeed, the arbitrator could not have known that the Postal Service would continue to fail to pay COLA-adjusted benefits for decades after the award. Accordingly, awarding interest would not be incompatible with the arbitral decision either.

The Postal Service suggests that the Court should not award interest to the Plaintiffs because the arbitrator "retained jurisdiction" over any issues that may arise in enforcing the award. Def. Mem. at 11–12. The Service makes much of the arbitrator's statement that he "continues jurisdiction over these cases, where and as appropriate, until the details have been decided, hopefully by the parties." Pl. Ex. 2 at 4. But the Court does not read this statement to cover the dispute in this case because the issue of interest on COLA payments was not included among the arbitrator's determinations. Indeed, the parties did not raise the issue of interest on the COLA-adjusted principal, although they raised an issue of interest on other payments. See id. at 2–3

(listing issues raised by parties at arbitration to include "the real rate of interest used to discount lump sum benefits").  Moreover, as explained previously, the arbitrator cannot maintain jurisdiction over the Plaintiffs' claims because the Plaintiffs, who have never been union members or postal employees, cannot proceed through the CBA grievance process.  Lastly, the arbitrator retained jurisdiction only "until the details have been decided," id., and negotiations between the Service and unions over implementation of the award ceased long ago.  The Court finds, therefore, that an award of prejudgment interest is not precluded by the underlying arbitral award.

iv.  <u>Remand to Resolve Ambiguities</u>

The Postal Service argues in the alternative that whether the arbitral award covers post-award interest is an ambiguity in the award that should be remanded to the arbitrator to resolve.  Def. Mem. at 12–13 (citing <u>United Steelworkers of Am. v. Enter. Wheel & Car Corp.</u>, 363 U.S. 593, 599 (1960)).  Courts cannot review a challenge to the merits of an arbitral award, <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 36–37 (1987), but awarding post-award interest in this case does not require interpretation of the award's terms.  As explained above, a court may require post-award interest if doing so is not clearly inconsistent with the terms of the award.  <u>See, e.g.</u>, <u>Continental Transfer Technique</u>, 932 F. Supp. 2d at 163.  The arbitral decision clearly does not foreclose prejudgment interest.  Because the arbitrator explicitly declined to decide whether to award interest, interest would not be incompatible with the award and remand would be inappropriate.

C.  <u>Waiver</u>

The Postal Service argues that even if Plaintiffs are entitled to interest under the CBA and Kerr Award, the unions waived Plaintiffs' right to interest during negotiations following the Kerr Award.  As noted above, the Postal Service sent a letter to union leadership after the Kerr Award asserting that "during our discussion the issue of interest payments on remedies was raised and we

15

responded by stating that interest payments were inappropriate.  Lacking any comment to the

contrary from you, we will assume that this issue is behind us."  Def. Ex. 11.  The Postal Service

argues that by failing to respond to its letter the unions waived any claim to interest on COLA-

adjusted payments and that, as third-party beneficiaries, Plaintiffs cannot claim interest because

they are bound by the unions' supposed waiver.  See Bituminous Coal Operators Ass'n v. Connors,

867 F.2d 625, 632 (D.C. Cir. 1989) (a third-party beneficiary is ordinarily subject to any claim of

defense that the promisor would have against the promise).

       Even assuming the unions had the legal authority to waive interest payments on behalf of

the Plaintiffs, the evidence submitted by the Service does not establish waiver.  Waiver of a legal

right or interest must be clear and unambiguous.  See, e.g., People for the Ethical Treatment of

Animals v. Gittens, 396 F.3d 416, 426 (D.C. Cir. 2005) (waiver of claim for nominal damages);

Russell v. Harman Int'l Indus., Inc., 945 F. Supp. 2d 68, 76 (D.D.C. 2013) (waiver of ERISA

claims); Edwards v. Washington, 661 F. Supp. 2d 13, 16 (D.D.C. 2009) (discussing prospective tort

liability waiver).  Ordinarily, waiver requires an affirmative act of the party waiving his or her

rights.  See, e.g., id. (plaintiff signed a waiver agreement); Mero v. City Segway Tours of

Washington, D.C., Inc., 962 F. Supp. 2d 92, 97–98 (D.D.C. 2013) (same).  As an affirmative

defense, the defendant bears the burden of establishing waiver.  E.g., Russell, 945 F. Supp. 2d at 73.

       In the process of implementing the arbitral award, the Postal Service simply stated in a letter

that paying interest would be "inappropriate" and the unions do not appear to have responded.  Def.

Ex. 11.  Without any affirmative actions by the unions or, at the least, an explicit statement by the

Postal Service that the unions' failure to respond waived or otherwise foreclosed the employees'

rights to collect interest, the Postal Service's letter is not sufficient to establish waiver.  The letter is

also unclear whether the parties' discussion on "interest payments on remedies" concerned interest

on future arbitral award payments or only interest for the period between the initial life insurance

payment and the award.  As of the date of the letter in 1987, there would have been no reason for

the parties to have contemplated such a long delay between the arbitral decision and payment.

D. Impracticability

As a final stand, the Postal Service contends that the doctrine of impracticability bars claims

by the unpaid beneficiaries because the agency was not able to find these beneficiaries.  According

to the Postal Service, the life insurance provider, MetLife, initially refused to provide it with

beneficiary information, causing it "to undergo lengthy negotiations with the Office of Personnel

Management" to obtain other contact information.  Def. Mem. at 22.  The Postal Service also posits

that because both it and Plaintiffs' counsel have been unable to locate many of the beneficiaries

thus far, the Court should assume that it is impossible to find them.

The defense of impracticability requires (1) the unexpected occurrence of an intervening act;

(2) that the risk of the unexpected occurrence was not allocated by agreement or custom; and (3)

that the occurrence made performance impractical.  Nat'l Assoc. of Postmasters v. Hyatt Regency

Washington, 894 A.2d 471, 477 n.5 (D.C. 2006).  Impracticability requires "extreme or

unreasonable difficulty or expense."  Whelan v. Griffith Consumers Co., 170 A.2d 229, 230 (D.C.

1961).  The Postal Services' justifications for delay come nowhere close to reaching this standard.

It faces no more than the ordinary difficulties that one would expect to arise when tracking down

contact information for tens of thousands of people—a task that any entity charged with

administering life insurance benefits should have anticipated.  The Service's dispute with MetLife,

which resulted from agency's initial refusal to pay Metlife for information, Def. Ex. 4 at 67–68,

lasted only until the early 1990s, Def. Statement of Material Facts ¶¶ 27–28, and does not explain

the Postal Service's further delay in payment of over twenty years in some cases.  As to the

beneficiaries that neither the Postal Service nor Plaintiffs' counsel have located thus far, the proper

context to address this difficulty is in determining the appropriate remedy, where the parties and the Court can determine the best methods to attempt to locate class members.

### E.   Accidental Death Payments and Tax Set-Offs

Along with COLA-adjusted payments and interest, Plaintiffs assert for the first time in their summary judgment motion that they are entitled to accidental death payments—which are double indemnity payments owed under the Postal Service employees' life insurance plans—and compensation for taxes the class members will likely owe from any money judgment received from the Postal Service.  Plaintiffs reason that the beneficiaries would have owed no taxes had they received this money as life insurance payments in the first instance.

As the Postal Service argues, however, a plaintiff may not assert new claims in a motion for summary judgment but must instead seek leave to file an amended complaint.  E.g., Sharp v. Rosa Mexicano, LLC, 496 F. Supp. 2d 93, 97 n.3 (D.D.C. 2007) (collecting cases).  Plaintiffs did not allege they were owed accidental death payments or tax offsets in the amended complaint or in moving to certify the class.  Because the factual allegations in their complaint make no mention of these injuries, these claims fail basic notice requirements.  See Fed. R. Civ. P. 8(a).  Summary judgment in favor of the Plaintiffs on these allegations would be particularly problematic because the Postal Service has had no notice of these allegations through discovery.  Plaintiffs cannot expand their claims without justification at such a late stage in this litigation.  Accordingly, the Court will deny Plaintiffs' request.

**IV.      Conclusion**

For the foregoing reasons the Court will deny the Postal Service's motion for summary

judgment and grant in part the Plaintiffs' motion for partial summary judgment.  The Court will

issue an order consistent with this opinion.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:    December 4, 2014